**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| WENDEL (ROBERT) WARDELL, JR., : : Petitioner, : : v. : : CHARLES E. SAMUELS, JR., : : Respondent. : | Civil Action No. 07-0020 (RMB) **OPINION** |

**APPEARANCES:**

Petitioner pro se
Wendel (Robert) Wardell, Jr.
F.C.I. Fort DixP.O. Box 2000
P.O. Box 2000
Fort Dix, NJ 08640-0907

Counsel for Respondent
Dorothy J. Donnelly
Assistant U.S. Attorney
402 East State Street
Room 430
Trenton, NJ 08608

**BUMB**, District Judge

Petitioner Wendel (Robert) Wardell, Jr., a prisoner currently confined at the Federal Correctional Institution at Fort Dix, New Jersey, has submitted a petition for writ of habeas corpus, pursuant to 28 U.S.C. § 2241,[1] challenging the results of

---

[1] United States Code Title 28, Section 2241, provides in pertinent part:
(a) Writs of habeas corpus may be granted by the ... district courts ... within their respective jurisdictions ...
(c) The writ of habeas corpus shall not extend to a prisoner unless- ... (3) He is in custody in violation of the Constitution or laws or treaties of the United States ... .

a prison disciplinary proceeding. The sole respondent is Warden Charles Samuels, Jr.

For the reasons set forth below, the Petition will be dismissed.

## I.   BACKGROUND

On February 23, 2006, while confined at the Federal Correctional Institution at Englewood, Colorado, Petitioner was charged with Refusing to Obey a Direct Order from Staff, Code 309.[2] The Incident Report contains the reporting officer's description of the event giving rise to the charge.

> On 2-23-06 at approximately 5:41 pm I responded to a body alarm in A unit, I was directed to lock down the inmates with the cell key from the Unit officer Doyle. As I went to lock down inmate Wardell, Wendel ... into his cell, He stated to me "You might as well take me to the hole, because I am not locking down" I instructed inmate Wardell to face the wall until the Ops. Lt. arrived. Inmate Wardell was cuffed and taken to SHU without further incident.

(Incident Report, ¶ 11.) A copy of the Incident Report was delivered to Petitioner that same day at 8:57 p.m.

Four days later, the Unit Disciplinary Committee conducted a hearing. The Incident Report contains Petitioner's comments to the UDC:

> There was some confusion about locking down. My mind was focused on what was happening with my cellie. I did not hear the officer say lock down.

---

[2] This erroneous citation was later changed to Code 307, the correct citation for Refusing to Obey.

(Incident Report, ¶ 17.)  The Incident Report further reflects that Petitioner did not request any witnesses, (Incident Report, ¶ 24), although Petitioner states here that he repeatedly requested to call his cellmate (also charged in the incident) as a witness.  Petitioner also states here that he objected that the outcome of the hearing was predetermined, as evidenced by the fact that another inmate had already been assigned to Petitioner's job.

The UDC relied upon the officer's report to find that Petitioner did commit the charged act.  The UDC sanctioned Petitioner with the loss of his job.

Petitioner timely initiated the appeals process by submitting his request for administrative remedy to the Warden.[3]

---

[3] The BOP Administrative Remedy Program is a three-tier process that is available to inmates confined in institutions operated by the BOP for "review of an issue which relates to any aspect of their confinement."  28 C.F.R. § 542.10.  An inmate must initially attempt to informally resolve the issue with institutional staff.  28 C.F.R. § 542.13(a).  If informal resolution fails or is waived, an inmate may submit a BP-9 Request to "the institution staff member designated to receive such Requests (ordinarily a correctional counsel)" within 20 days of the date on which the basis for the Request occurred, or within any extension permitted.  28 C.F.R. § 542.14.  An inmate who is dissatisfied with the Warden's response to his BP-9 Request may submit a BP-10 Appeal to the Regional Director of the BOP within 20 days of the date the Warden signed the response.  28 C.F.R. § 542.15(a).  The inmate may appeal to the BOP's General Counsel on a BP-11 form within 30 days of the day the Regional Director signed the response.  Id.  Appeal to the General Counsel is the final administrative appeal.  Id.  If responses are not received by the inmate within the time allotted for reply, "the inmate may consider the absence of a response to be a denial at that level."  28 C.F.R. § 542.18.

During the administrative appeals process, however, Petitioner was transferred to the Federal Correctional Institution at Fort Dix, New Jersey. Ultimately, Petitioner's subsequent level of appeal was rejected as untimely. This Petition followed.[4]

---

[4] Although 28 U.S.C. § 2241 contains no statutory exhaustion requirement, a federal prisoner ordinarily may not bring a petition for writ of habeas corpus under 28 U.S.C. § 2241, challenging the execution of his sentence, until he has exhausted all available administrative remedies. See, e.g., Callwood v. Enos, 230 F.3d 627, 634 (3d Cir. 2000); Arias v. United States Parole Comm'n, 648 F.2d 196, 199 (3d Cir. 1981); Soyka v. Alldredge, 481 F.2d 303, 306 (3d Cir. 1973). The exhaustion doctrine promotes a number of goals:

> (1) allowing the appropriate agency to develop a factual record and apply its expertise facilitates judicial review; (2) permitting agencies to grant the relief requested conserves judicial resources; and (3) providing agencies the opportunity to correct their own errors fosters administrative autonomy.

Goldberg v. Beeler, 82 F.Supp.2d 302, 309 (D.N.J. 1999), aff'd, 248 F.3d 1130 (3d Cir. 2000). See also Moscato v. Federal Bureau of Prisons, 98 F.3d 757, 761 (3d Cir. 1996). Nevertheless, exhaustion of administrative remedies is not required where exhaustion would not promote these goals. See, e.g., Gambino v. Morris, 134 F.3d 156, 171 (3d Cir. 1998) (exhaustion not required where petitioner demonstrates futility); Lyons v. U.S. Marshals, 840 F.2d 202, 205 (3d Cir. 1988) (exhaustion may be excused where it "would be futile, if the actions of the agency clearly and unambiguously violate statutory or constitutional rights, or if the administrative procedure is clearly shown to be inadequate to prevent irreparable harm"); Carling v. Peters, 2000 WL 1022959, *2 (E.D. Pa. 2000) (exhaustion not required where delay would subject petitioner to "irreparable injury").

Respondent contends that this Petition should be dismissed because Petitioner failed to comply with the administrative appeals process. Petitioner contends that he was unable to file a timely BP-10 because he was transferred without his legal paperwork and could not file until he received his records. Because the Petition is meritless, this Court need not determine whether to excuse Petitioner's failure to exhaust.

Here, Petitioner asserts that he was denied due process during the disciplinary hearing as follows: his guilt was predetermined as evidenced by the assignment of another prisoner to his job before the hearing, there was a lack of evidence that any order was given, the UDC refused to call his witness, and he was denied a meaningful appeal. Petitioner states that he has been deprived of liberty interests in his job and in an accurate custody rating, which will prevent his transfer to a facility closer to his home. Petitioner requests expungement of the disciplinary conviction from his records and reinstatement in his law library job.

## II.  ANALYSIS

A habeas corpus petition is the proper mechanism for a prisoner to challenge the "fact or duration" of his confinement, Preiser v. Rodriquez, 411 U.S. 475, 498-99 (1973), including challenges to prison disciplinary proceedings that affect the length of confinement, such as deprivation of good time credits, Muhammad v. Close, 540 U.S. 749 (2004) and Edwards v. Balisok, 520 U.S. 641 (1997). See also Wilkinson v. Dotson, 125 S.Ct. 1242 (2005). In addition, where a prisoner seeks a "quantum change" in the level of custody, for example, where a prisoner claims to be entitled to probation or bond or parole, habeas is the appropriate form of action. See, e.g., Graham v. Broglin, 922 F.2d 379 (7th Cir. 1991) and cases cited therein. See also

Woodall v. Federal Bureau of Prisons, 432 F.3d 235, 237 (3d Cir. 2005) (challenge to regulations limiting pre-release transfer to community corrections centers properly brought in habeas); Macia v. Williamson, 2007 WL 748663 (3d Cir. 2007) (finding habeas jurisdiction in challenge to disciplinary hearing that resulting in sanctions including loss of good-time credits, disciplinary segregation, and disciplinary transfer).

The Court of Appeals for the Third Circuit has held that habeas corpus is an appropriate mechanism, also, for a federal prisoner to challenge the execution of his sentence. See Coady v. Vaughn, 251 F.3d 480, 485-86 (3d Cir. 2001) (noting that federal prisoners may challenge the denial of parole under § 2241); Barden v. Keohane, 921 F.2d 476, 478-79 (3d Cir. 1990) (challenge to BOP refusal to consider prisoner's request that state prison be designated place for service of federal sentence).

The Court of Appeals has noted, however, that "the precise meaning of 'execution of the sentence' is hazy." Woodall, 432 F.3d at 237. To the extent a prisoner challenges sanctions affecting his conditions of confinement, such claims must be raised by way of a civil rights action. See Leamer v. Fauver, 288 F.3d 532 (3d Cir. 2002). See also Ganim v. Federal Bureau of Prisons, 235 Fed.Appx. 882, 2007 WL 1539942 (3d Cir. 2007) (challenge to garden-variety transfer not cognizable in habeas);

Castillo v. FBOP FCI Fort Dix, 221 Fed.Appx. 172, 2007 WL 1031279 (3d Cir. 2007) (habeas is proper vehicle to challenge disciplinary proceeding resulting in loss of good-time credits, but claims regarding sanctioned loss of phone and visitation privileges not cognizable in habeas).

Here, the only sanctions imposed, loss of job, and the hypothetical effect on Petitioner's custody level and place of confinement, are not the types of sanctions cognizable in habeas. Accordingly, this Court lacks jurisdiction to hear the claims in this habeas Petition.

In the alternative, to the extent this Court can exercise habeas jurisdiction over Petitioner's claims, or can consider the viability of the claims in a civil action, see Castillo, 221 Fed.Appx. at *2 (considering viability of claims under civil rights, injunctive relief, and mandamus theories after determining that claims challenging disciplinary sanctions not cognizable in habeas), they are meritless.

Convicted and sentenced prisoners retain the protections of the Due Process Clause of the Fifth and Fourteenth Amendments that the government may not deprive them of life, liberty, or property without due process of law. See Wolff v. McDonnell, 418 U.S. 539, 556 (1974); Haines v. Kerner, 404 U.S. 519 (1972); Wilwording v. Swenson, 404 U.S. 249 (1971). Such protections are, however, "subject to restrictions imposed by the nature of

the regime to which [prisoners] have been lawfully committed. ... In sum, there must be mutual accommodation between institutional needs and objectives and the provisions of the Constitution that are of general application." Wolff, 418 U.S. at 556.

A liberty interest protected by the Due Process Clause may arise from either of two sources: the Due Process Clause itself or from state or federal law. See Hewitt v. Helms, 459 U.S. 460, 466 (1983); Asquith v. Department of Corrections, 186 F.3d 407, 409 (3d Cir. 1999).

Where the government has created a right to good time credits, and has recognized that a prisoner's misconduct authorizes deprivation of the right to good time credits as a sanction,[5] "the prisoner's interest has real substance and is sufficiently embraced within Fourteenth Amendment 'liberty' to entitle him to those minimum procedures appropriate under the circumstances and required by the Due Process Clause to insure that the state-created right is not arbitrarily abrogated." Wolff, 418 U.S. at 557.

---

[5] The Constitution itself does not guarantee good time credits for satisfactory behavior in prison. Congress, however, has provided that federal prisoners serving a term of imprisonment for more than one year, other than a term of imprisonment for the duration of the prisoner's life, may receive credit toward the service of their sentence based upon their conduct. See 18 U.S.C. § 3624(b); 28 C.F.R. § 523.20.

Thus, a prisoner challenging a loss of good-time credits is entitled to an impartial disciplinary tribunal, Wolff, 418 U.S. at 570-71, excluding "only those [prison] officials who have a direct personal or otherwise substantial involvement ... in the circumstances underlying the charge from sitting on the disciplinary body," Meyers v. Alldredge, 492 F.2d 296, 306 (3d Cir. 1974).

To comply with the requirements of the Due Process Clause, prison officials also must provide a prisoner facing loss of good-time credits with: (1) a written notice of the charges at least 24 hours prior to any hearing, (2) an opportunity to call witnesses and presented documentary evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals,[6] and (3) a written statement by the factfinders as to the evidence relied on and the reasons for the disciplinary action.  Wolff, 418 U.S. at 564-66. Prisoners do not have a due process right of confrontation and

---

[6] Prison officials must justify their refusal to call witnesses requested by the prisoner, but such justification need not be presented at the time of the hearing.  To the contrary, the explanation for refusal to call witnesses requested by the prisoner may be provided through court testimony if the deprivation of a liberty interest is challenged because of that claimed defect in the hearing. See Ponte v. Real, 471 U.S. 491 (1985).  "{P]rison officials may deny a prisoner's request to call a witness in order to further prison security and correctional goals.  ...  [T]he burden of persuasion as to the existence and sufficiency of such institutional concerns is borne by the prison officials, not by the prisoners." Grandison v. Cuyler, 774 F.2d 598, 604 (3d Cir. 1985).

cross-examination, or a right to counsel, in prison disciplinary proceedings. Id. at 569-70. Where an illiterate inmate is involved, or the complexity of the issue makes it unlikely that the inmate involved will be able to collect and present the evidence necessary for an adequate comprehension of the case, the prisoner should be permitted to seek the aid of a fellow inmate or appropriate staff member. Id. at 570.

Finally, due process requires that findings of a prison disciplinary official, that result in the loss of good time credits, must be supported by "some evidence" in the record. Superintendent, Massachusetts Correctional Institution at Wolpole v. Hill, 472 U.S. 445, 454-56 (1985).[7]

It is this body of law upon which Petitioner relies. (Traverse at 8-11.) Where a prisoner suffers no impairment of a liberty interest, however, Wolff does not apply.[8] With respect

---

[7] The due process requirements of Wolff, as they relate to federal prisoners, have been codified in the Code of Federal Regulations at 28 C.F.R. § 541.10 et seq. See, e.g., 28 C.F.R. § 541.14 (Incident report and investigation); 28 C.F.R. § 541.16 (Establishment and functioning of the Discipline Hearing Officer); 28 C.F.R. § 541.17 (Procedures before the Discipline Hearing Officer).

[8] Other cases in which the Supreme Court has found a liberty interest entitled to due process protections include Washington v. Harper, 494 U.S. 210, 221-22 (1990)(prisoner has liberty interest under the Due Process Clause in freedom from involuntary administration of psychotropic drugs); Vitek v. Jones, 445 U.S. 480, 493-94 (1980)(prisoner has liberty interest under the Due Process Clause in freedom from involuntary transfer to state mental hospital coupled with mandatory treatment for mental illness, a punishment carrying "stigmatizing consequences" and

to convicted and sentenced prisoners, "[a]s long as the conditions or degree of confinement to which the prisoner is subjected is within the sentence imposed upon him and is not otherwise violative of the Constitution, the Due Process Clause does not in itself subject an inmate's treatment by prison authorities to judicial oversight." Montanye v. Haymes, 427 U.S. 236, 242 (1976), quoted in Hewitt, 459 U.S. at 468 and Sandin v. Conner, 515 U.S. 472, 480 (1995).

As noted above, governments may confer on prisoners liberty interests that are protected by the Due Process Clause. "But these interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin, 515 U.S. at 484 (finding that disciplinary segregation conditions which effectively mirrored those of administrative segregation and protective custody were not "atypical and significant hardships" in which a state conceivably might create liberty interest). See also Asquith, 186 F.3d at 411-12 (return to prison from halfway house did not impose "atypical and significant hardship" on prisoner and, thus,

---

"qualitatively different" from punishment characteristically suffered by one convicted of a crime).

did not deprive him of protected liberty interest).  In <u>Griffin v. Vaughn</u>, 112 F.3d 703, 708-09 (3d Cir. 1997), the Court of Appeals for the Third Circuit held that a 15-month confinement in administrative custody did not impose "atypical and significant hardship," even in the face of state regulation requiring release to the general population after 20 days in the absence of a misconduct charge.

None of the sanctions imposed on Petitioner deprived him of a property or liberty interest protected by the Due Process Clause or imposed on him an "atypical and significant hardship." <u>See</u>, <u>e.g.</u>, <u>James v. Quinlan</u>, 866 F.2d 627, 629-30 (3d Cir.) (inmates have neither liberty nor property interest in federal prison industries job assignments), <u>cert. denied</u>, 493 U.S. 870 (1989).  In addition, it is well established that a prisoner possesses no liberty interest arising from the Due Process Clause in a particular custody level or place of confinement.  <u>See</u>, <u>e.g.</u>, <u>Olim v Wakinekona</u>, 461 U.S. 238, 245-46 (1983); <u>Hewitt</u>, 459 U.S. at 466-67; <u>Moody v. Daggett</u>, 429 U.S. 78, 88 n.9 (1976); <u>Meachum v. Fano</u>, 427 U.S. 215, 224-25 (1976); <u>Montanye</u>, 427 U.S. at 242.  Thus, there is no due process violation in these sanctions.

### III.  <u>CONCLUSION</u>

For the reasons set forth above, the Petition will be dismissed for lack of jurisdiction.  In the alternative, to the

extent this Court may exercise jurisdiction over Petitioner's claims, the Petition is denied as meritless.  An appropriate order follows.

s/Renée Marie Bumb
Renée Marie Bumb
United States District Judge

Dated: October 31, 2007